UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALLEN SMITH,

          Petitioner,          Case No. 20-10565
                                                Honorable David M. Lawson

v.

GARY MINIARD,

          Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

David Allen Smith was convicted by a Michigan jury of three counts of first-degree criminal sexual conduct for repeatedly sexually assaulting his young stepsister over several years. After his convictions were affirmed by the Michigan appellate courts, he filed a petition for a writ of habeas corpus arguing that the trial court interfered with his right to present a defense when it excluded evidence of an acquittal on a similar charge involving the same victim, his trial counsel performed deficiently when cross-examining the victim, and the verdict was against the great weight of the evidence. Because the state courts' decisions did not contravene or misapply governing federal law, the petition will be denied.

I.

Charges were filed in 2015 against Smith in both Wayne and Oakland Counties stemming from allegations made by his stepsister, TA, that he engaged in acts of sexual penetration with her. Smith was accused of sexually assaulting TA, who was born in 1997, at her Detroit home from 2005 to 2008, and that he continued to sexually assault her at her home in Oak Park when she moved there in 2008. TA did not tell her mother about the petitioner's conduct until 2012, and neither she nor her mother reported the abuse to the police until 2015.

The Wayne County case was tried first. Smith was acquitted of one count of first-degree criminal sexual conduct, and the jury was unable to reach a verdict on the other counts. The case was not retried.

Before the Oakland County trial began, a hearing was held on the admissibility of the evidence of the crimes charged in the Wayne County case. Defense counsel asserted that because of the complainant's young age at the time of the Wayne County allegations, she would likely confuse the various alleged assaultive acts during her testimony. The prosecution replied that the evidence was necessary to establish that an abusive relationship already existed when TA moved to Oak Park. During the course of the argument, defense counsel informed the court of Smith's acquittal of one count in Wayne County. Learning for the first time of the acquittal, the court decided that the facts surrounding that particular incident would not be admitted at trial. The court ruled that testimony describing the other prior acts would be admissible. At no point in the hearing did defense counsel argue for admission of evidence regarding the not guilty verdict itself.

TA's mother, Tracey Smith, testified at trial that TA was about five years old when Tracey met the petitioner and his father, David Smith, Senior. The petitioner was twelve or thirteen years old at the time. Smith Senior and the petitioner moved into Tracey and TA's house in Detroit. TA and the petitioner had separate bedrooms, and the petitioner would stay overnight every other weekend. Tracey's young nephew, Van, also spent a lot of time at the home because Van's mother was disabled. Tracey married Smith Senior in 2003.

In March of 2008, the family moved to a home in Oak Park. Again, the petitioner visited on weekends. The house had a finished basement with an entertainment center, a storeroom, bathroom, and laundry room.

The assaults came to light a few years later when TA was in ninth grade. Smith Senior called Tracey home from work and told her that TA was upset. Tracey then spoke with TA about having people over while no one was home. That evening TA wrote a letter in which she described a series of sexual assaults that the petitioner committed against her. The letter upset Tracey. Tracey told Smith Senior to call the petitioner to the house. With the petitioner and TA present, Tracey confronted the petitioner with the contents of the letter accusing him of sexual misconduct with TA. The petitioner denied the allegations immediately, and he and TA then got into an argument. TA did not want to go to the police at that time because she did not want to deal with it. Tracey did not go to the police then.

Tracey did not allow Smith in the house after that confrontation. Meanwhile, Smith Senior became hostile toward TA, and there was a breakdown in their relationship. TA started going to counseling for depression, she started cutting herself, and she told Tracey that she did not want to live anymore.

The relationship between Tracey and Smith Senior continued to unravel in June of 2015, when an argument sent Tracey, upset, to her mother's house. Tracey told her mother, Forestine Clayton, about TA's allegations regarding the petitioner. Smith Senior was called to the house, and Tracey and Smith Senior argued about the allegations. Van, the nephew, who was in an adjacent room, then came in told Smith Senior that TA was not lying. At that point, Tracey's mother urged her to go to the police. TA said she was ready to do so. Tracey and TA then went to the Detroit Police and the Oak Park Police and made reports. In September of 2015 Smith Senior moved out of the house.

TA, eighteen years old at the time of trial, testified that she was four years old when Smith Senior and the petitioner came to live with them in a house in Detroit. The petitioner became like

a big brother to TA. TA was also very close with her cousin, Van, who was close in age to TA and spent a lot of time at the house. TA said that when she was about eight years old, there was an evening when the petitioner and Van spent the night. The petitioner and Van asked TA if she wanted to watch television. TA went into the petitioner's room where he was watching pornographic movies. TA recalled seeing a naked man and a woman. TA asked what they were watching, and Smith said he would show her. TA then got on the bed, and something that TA did not understand at the time happened with the petitioner.

TA testified that similar incidents continued to happen between the petitioner and her at the Detroit house. TA recalled an occasion when she was waking up in her bed. The petitioner came in and started to play-flight with her. The petitioner climbed on top of her and pulled down her underwear. He then put his penis in her vagina. TA recalled the petitioner sexually assaulting her about fifteen to twenty times at the Detroit house in the same manner. TA did not tell her mother because she did not know at the time that what the petitioner was doing was wrong.

TA testified that she moved to the house in Oak Park when she was ten years old. The petitioner was in high school and TA was in fifth grade. The petitioner continued to sexually assault her. On one occasion, the petitioner and Van asked TA if she wanted to watch a movie. They went down to the basement. When Van fell asleep, the petitioner took TA into the storage room. He told her to lean over the computer stand. He lifted her nightgown, pulled down her underwear, and inserted his penis into her vagina. TA heard something, and when she looked towards the door, she saw Van standing there. The petitioner told Van to go sit back down.

Another assault occurred in much the same way later that summer during TA's eleventh birthday party. TA was watching Van and her cousin playing video games in the basement. The petitioner sat down next to her and rubbed his penis against her foot. The petitioner told TA to go

upstairs to her bedroom, where he leaned her over her dresser, pulled down her underwear, and inserted his penis in her vagina.

TA described another incident occurring in September of 2008, and one around December of 2008, where the petitioner penetrated her vagina with his penis. TA could not recall how many times this happened in the basement bathroom, but she estimated it happened between five and ten times. As TA got older, the petitioner did not come home as frequently.

When TA was seventeen years old, she finally spoke with her grandmother, Ms. Clayton, and they decided to go to the police and make a report.

Tracey's nephew Vandzont "Van" Clayton testified about the incident in the basement in the Detroit house when pornography was playing on the television. He was about eight or nine years old at the time. Van also described other things that happened at the house in Detroit between the petitioner and TA. He also saw incidents in Smith's room and in the basement at the house in Oak Park. One incident occurred in the storage room with TA bent over the computer stand and the petitioner standing behind her. TA's pants were pulled down and their bodies were moving. Van was present during the confrontation between Tracey's mother and Smith Senior, and he told the adults that TA was not lying.

Smith Senior testified that after the petitioner turned eighteen in June of 2008, there was only a single night that the petitioner stayed overnight at the Oak Park house. The day that TA wrote the letter to her mother, Smith Senior had caught TA with a boy in the house. Smith Senior sent her to her room and called Tracey. TA gave Tracey the letter when she got home. Smith Senior called the petitioner to the house, and he denied everything.

In 2015, Smith Senior caught Tracey cheating on him. Smith Senior was called over to his mother-in-law's house to hear what Van had to say. He contended that there was no argument. Smith Senior never saw Smith doing anything inappropriate with TA.

The petitioner, testifying in his own defense, said that he was popular in school and became sexually active with his girlfriend when he was seventeen years old. He testified that he never slept at the house in Oak Park, and he rarely spent the night at the house in Detroit. The petitioner denied watching pornographic movies with TA, being attracted to her, or having sex with her. The petitioner was called over to the house regarding the letter that TA wrote. The petitioner read the letter and immediately denied the accusations. The petitioner did not know why TA made the claims against him.

The jury did not accept that explanation and found the petitioner guilty of three counts of first-degree criminal sexual conduct. He was sentenced to three concurrent terms of 25 to 50 years imprisonment. Afterward, he filed a motion for new trial, arguing that the jury's verdict was against the great weight of the evidence. The trial court denied the motion.

The petitioner's convictions were affirmed by the Michigan Court of Appeals, *People v. Smith*, No. 333983, 2018 WL 442753 (Mich. Ct. App. Jan. 16, 2018), and the Michigan Supreme Court denied leave to appeal, *People v. Smith*, 503 Mich. 912 919 N.W.2d 792 (Mich. 2018) (table).

The petitioner filed his petition for a writ of habeas corpus arguing that (1) his right to present a defense was violated when he was prohibited from presenting evidence at his trial of a prior acquittal on another charge involving the same complainant, (2) his trial counsel failed to adequately impeach the complainant's credibility, and (3) the verdict was against the great weight of the evidence.

In his response, the warden argues that some of the arguments presented here were raised too late because they were not brought to the state court's attention by contemporaneous objection or on appeal, and therefore they are subject to the defense of procedural default. The other claimed constitutional violations, he says, are meritless.

The "procedural default" argument is a reference to the rule that the petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

A.

The petitioner argues that he was denied his right to a fundamentally fair trial because the trial court allowed TA to testify about the prior acts at issue in the Wayne County case, but it prohibited him from offering evidence that the jury acquitted him of one count. He asserts that the suppression of the prior acquittal also violated his due process right to present a defense. The Michigan Court of Appeals rejected this argument on a procedural ground — that the petitioner successfully moved at trial to exclude this evidence altogether and could not take a different position on appeal — and a substantive ground — that the acquitted conduct in the Wayne County

case involved oral sex and therefore was materially different from the type of penetration charged in the Oakland County case. *Smith*, 2018 WL 442753, at *3 & n.1.

This was not a novel issue under state evidence law. Prior sex acts by a defendant accused of sexual misconduct have been allowed into evidence under state law to prove a non-propensity proposition, even when the earlier acts were the subject of acquittals. *See*, *e.g.*, *People v. Oliphant*, 399 Mich. 472, 498, 250 N.W.2d 443, 454 (1976). And the issue presented here is nothing more than a state evidence question. The Supreme Court has cautioned that a challenge to whether evidence was properly admitted under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1992). A federal constitutional issue — one that a federal habeas court can address — does not emerge unless the exclusion of evidence "rendered [the] petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights," such as the right to present a defense. *Lewis v. Wilkinson*, 307 F.3d 413, 420 (6th Cir. 2002) (citation omitted). !

! A person accused of a crime has a constitutional right to present evidence to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'") (citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). Rulings that exclude evidence from criminal trials do not violate the right

to present a defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Moreover, under the standard of review for habeas cases as enunciated in section 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful defense evidence was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *Rockwell v. Yukins*, 341 F. 3d 507, 511-12 (6th Cir. 2003).

The petitioner has not made that showing here. Under established evidentiary rules, evidence of prior acquittals generally is held to be inadmissible at trial. *See McKinney v. Galvin*, 701 F.2d 584, 586 n.5 (6th Cir. 1983); *United States v. De La Rosa*, 171 F.3d 215, 220 (5th Cir. 1999) (citing cases from seven circuits that agree such evidence is generally inadmissible). "It is settled that a criminal defendant ordinarily may not introduce evidence at trial of his or her prior acquittal of other crimes," and the "hearsay, relevance, and more-prejudicial-than-probative rules generally preclude the admission of evidence of such prior acquittals." *United States v. Williams*, 784 F.3d 798, 803 (D.C. Cir. 2015); *see also United States v. Thomas*, 114 F.3d 228, 249-50 (D.C. Cir. 1997) (same). The petitioner cites no cases to the contrary. He offers no reason why application of the general rule excluding evidence of a prior acquittal should be applied here. Moreover, the trial court ruled that the complainant could not testify regarding the charge for which Smith was acquitted in Wayne County.

The state courts' rejection of the petitioner's argument challenging the exclusion of the acquittal of a charge that was based on conduct that never was introduced at trial did not amount to a contravention or unreasonable application of federal law.

B.

The petitioner contends that his trial attorney performed deficiently by failing to impeach the complainant about her failure to recount one of the episodes of sexual assault at trial that she described during the preliminary examination. He also asserts that counsel should have focused her cross-examination on the narrow window of time when TA was under the age of eleven at the Oak Park home. The court of appeals found no problem with defense counsel's performance, observing that the incident that TA described at the preliminary examination was not even introduced at trial. Calling out that incident, only to try to strike it down, the court believed, would have been a mistake. "Defendant has not explained why defense counsel's decision to not place before the jury more allegations of abuse made by the victim against defendant was not sound trial strategy." *Smith*, 2018 WL 442753, at *3-4.

This holding faithfully tracked federal law. A petitioner claiming a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted). And where the

challenged conduct amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective-assistance-of-counsel claims is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). Under AEDPA, the standard for obtaining relief under *Strickland* is very difficult to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The incident that the petitioner apparently wanted his trial attorney to explore was a sexual assault on a staircase. At the preliminary examination, TA testified that in December of 2008, the petitioner sexually assaulted her at the Oak Park home on the steps leading from the basement to the kitchen. At trial, TA described the petitioner's various sexual assaults that occurred at the Oak

Park home in the basement, in the living room, and in the basement bathroom. Contrary to the petitioner's assertion, however, TA was not asked at trial about the alleged assault on the basement stairs. And she was not asked at trial by the prosecutor to describe *every* assault that took place at the Oak Park home. Rather, she testified that Smith assaulted her many more times than she described in detail.

For defense counsel to impeach TA about the stairway incident, he first would have had to elicit trial testimony from TA about it. There was no obvious benefit to that. There is no basis in the record to conclude that TA would have been unable to recount the stairway incidence at trial, or that if she did, that she would have given an inconsistent account. It is difficult to see how reasonable minds could differ that, as the state court found, it was sound strategy to avoid putting yet another specific instance of sexual assault before the jury.

Nor is the petitioner's second argument supported by the record. He posits that TA's trial testimony cabined the incidents at the Oak Park house to a narrow window between March of 2008, when the family moved there, and August of 2008, when she turned eleven years old. That argument is not well developed. The petitioner cites "T 69" as the part of the record that supposedly supports the argument. It does not. Nor was the Court able to locate any part of TA's trial testimony suggesting that all of the abuse occurred before she turned eleven. Rather, TA testified that one of the sexual assaults occurred on her eleventh birthday, and that more assaults occurred *after* her birthday. It follows, then, that trial counsel could not have performed deficiently by not arguing that TA was not credible in light of the timeframe during which the assaults were said to have taken place.

The petitioner's ineffective assistance of counsel claim is without merit.

C.

The petitioner's final claim — that his convictions are against the great weight of the evidence — was presented to the Michigan Court of Appeals, and he raises it again here. Significantly, he does *not* argue that the evidence was insufficient as a matter of law to sustain the convictions. That would present an entirely different claim. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (holding that a reviewing court must decide whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (holding that under the AEDPA, habeas petitioners must penetrate "two layers of deference to groups who might view facts differently" — the factfinder at trial and the state court on appellate review).

The Michigan Court of Appeals rejected that argument, citing state law that prohibited reviewing courts from reweighing the evidence and making fresh credibility findings. *Smith*, 2018 WL 442753, at *1-3. In a federal habeas action, however, that argument has no traction because it is a claim grounded in state law, and a federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Artis v. Collins*, 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to a habeas petitioner on claim that the jury's verdict was against the manifest weight of the evidence).

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an

unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: May 11, 2022